All right. Thank you for the flexibility this morning, and Counsel, you may proceed. Thank you, Your Honors. Good morning. I am George Gaitas. I am appearing on behalf of the Vessel Owner Appellants, who are also the Judgment Award and Arbitration Award accreditors. With the permission of the Court, I would like to address first an issue that was raised by motion, and that is the latest motion to dismiss this appeal, which is Docket No. 41. In the motion that was filed by the appellees, they argued that in light of a decision made by the Appellate Court of Norway, the judgment of the lower court of Norway has become a nullity. As it was reversed on August 22, their motion to dismiss was filed this September 22. We disagree with the idea that the judgment of the lower court in Norway had become a nullity. I think metaphorically it may be a nullity, but it remains a court decision in a properly constituted court in Norway, and it has some effect. What effect does it have? The effect that it has, Your Honor, it is an adjudication by a court, duly constituted, and it may not have collateral estoppel effect here, but it has the effect that it's an adjudication of facts, because it was reversed in Norway only on its facts. There was an adjudication of facts within the district court here, so how does this change that? Your Honor, there was an adjudication of the facts in the court here in the previous case, from which we sought relief by means of Rule 60B-5. Well, 60B-6, as the district court observed, would have permitted you to bring in new evidence, although it would have been too late. That's apparently not what you tried to do. You're coming in and saying, well, this different court, considering different evidence, came to a different result, and I'm not sure what difference that should make. Courts wind up coming to different results, particularly when presented with different evidence, all the time. So why does the second decision, in this case from Norway, require a do-over of the first proceeding? Because, Your Honor, in Norway, it was different evidence, additional evidence, including the testimony of the principals of the district court. There's no reason why that couldn't have been presented to the district court in San Francisco. It wasn't. So why is there a do-over? If your client didn't present the evidence that perhaps it should have, why do we do it over? Our client, Your Honor, did not have the evidence that was presented. We did not have the chairman of a group of companies that is presiding over our debtor, owned our debtor by 70 percent, and then planned and executed its dissolution without paying arbitration awards that they knew they were pending. In Norway, the action was brought on a different theory, actually. It was for the personal liability of the principals of the Berkshaven Group. The issues on the facts were similar. Who exercised dominion and control over the subsidiaries of our debtors? And the Norwegian court, after taking detailed evidence, not arriving at a probable cause conclusion, but on a full trial on the merits, adjudicated that Atlee Berkshaven exercised a decisive influence over the disposition of BGAS assets. He exploited his position as chairman and majority shareholder of BGAS to transfer assets to another company in which he was also chairman and part owner. And that's an excerpt from that decision. It's much more detailed. It's a trial that lasted three to four days. So it reached a conclusion which would give the court here probable cause to reopen. Okay. So I'm not understanding what the appellate court did. It seems like it reversed that lower court order. It says that the legal action was not successful and that the defendants in that case are acquitted. They were acquitted on a theory of liability, personal liability of shareholders and directors in tort. It's an entirely different approach. So there's two problems. One, either that case is directly on point, but you're just saying now that it's a totally different legal theory, so how is it relevant for our case? And two, if it's reversed, it's reversed. So why is not the lower court order a nullity completely? It's not a nullity, Your Honor, because the findings of fact remain findings of fact. Under our rules of evidence, that record is admissible. In other cases? In this country, yes. So the findings of fact in the lower court order, even though it's been vacated, is binding on the parties? It's not binding, Your Honor. It is additional evidence that a court that decided It's just persuasive evidence, just like any other evidence. It is not persuasive. It is additional evidence that But is it binding in any way? Is it binding between the parties? It is not, Your Honor. It is not binding, but it cannot be contested that this is what the record shows. It's additional evidence It's additional evidence that the court should include in opening this case again under 60B-5 because what is at stake is security of nearly $10.5 million. That security isn't in effect in the custody of the court, the district court here, because that's where it is. That's where it is at. It's in the custody of the court, and it depends on what the court does with this case on whether we can realize on this security. And for the record, the debtors have sold everything. They have parted with their assets. They have monetized them, and they're not in business any longer, but the security remains. And this is the only chance that the creditor has to be paid. And we're not talking about a Mickey Mouse sort of judgment. We're talking about an award, three arbitration awards in London arbitration. So, counsel, you're asking us to overturn the district court's ruling on the 60B-5 motion. Yes, Your Honor. So normally we would review that. I understand the district court made a certain, you can almost see a legal conclusion in this case. Yes. But we can affirm for any reason in the record, and let's assume the district court could reach this 60B-5 motion, wouldn't we be reviewing that decision for abuse of discretion? Yes, Your Honor. It would be. All right. So if we're reviewing for abuse of discretion, and you're asking us to overturn that decision based on a case that's been overturned by the courts in Norway, I'm not seeing how we can say the district court abuses discretion in not relying on a case that doesn't really exist anymore. Tell me why my thinking's wrong on that. At the relevant time, that decision was a decision that was admissible here based on equitable estoppel. Would that decision have been... And we would not have to be here if the court had accepted it. Right, but the decision's been overturned. But the decision was overturned about two months ago. Right. But not on its facts, on an issue of law that is not an issue of law here, even remotely. It's another issue of law here, and that is piercing the corporate veil in these circumstances. All right. Do you want to reserve some time for rebuttal? If I can have two minutes. I'll give you two minutes, sure. All right. Thank you, counsel. Thank you. Good morning, Your Honors. May it please the court, Keith Letourneau... One second. Okay, now you can go ahead. Good morning, Your Honors. May it please the court, Keith Letourneau for the appellee, Bergshaff-Aframax, limited. Just for the sake of clarity, Your Honors, there is only one appellee in this case, and that is Bergshaff-Aframax, limited. There are no other appellees. There are a variety of reasons why this court should affirm what the district court did below. And I can start with the response that the appellants provided in their cross motion, in response to our cross motion to dismiss. And specifically, if we look at docket 45.1, page 10 of 20, the appellants admit that collateral estoppel argument as to the Norwegian district court judgment fails. If you look at the Ninth Circuit decision in Ornalis v. Oakley, a reverse or dismissed judgment cannot serve as the basis for disposition on the ground of race judicata or collateral estoppel. Do you disagree with your colleague that there is some binding of, I mean, the factual findings are still remain from the lower quarter in Norway? Your Honor, I would say that if there is any effect of those findings, it is in law of the case in that case. But there is no collateral estoppel effect whatsoever. Bergshaff-Aframax was not a party to those proceedings. Those findings, in fact, don't have anything to do with Bergshaff-Aframax's involvement in this matter. So there's no collateral effect on your client, you're saying, from the Norwegian factual case? That is correct, Your Honor. And do you agree, though, that the appellate court only overturned it based off a legal question that's not really relevant here? No, Your Honor, I don't. We've submitted a Norwegian counsel's opinion on that point. And according to our Norwegian counsel, the analysis is that unless those arguments are preserved, then the totality of the case is before the court when the Norwegian court makes a decision. And by vacating that judgment, essentially it vacated all of the findings of fact below. But even if that is not the case, there's no collateral estoppel effect. What they're left with essentially is trying to argue that the existence of purported probable cause is sufficient to basically reopen this case. That decision with respect to Bopalo has already been decided. Judge Breyer made that decision basically finding that there was no ability to pierce the corporate veil because if you look at the minority shareholders agreement and the declaration of Nikolai Lawrenson, he found that there wasn't domination and control sufficient to establish a piercing the corporate veil. That essentially is a collateral estoppel against the appellants because the appellants were here in this proceeding and they were also there in the Norwegian proceeding. So from the standpoint of collateral estoppel, that's one basis to argue that Judge Breyer did everything correctly. Secondly, the vacatur order doesn't have any prospective application. And that's essentially what they were relying upon under Rule 60b-5. That one I'm not so sure. Why couldn't it be applied prospectively? Because the effect of that vacatur order is that the security guarantees no longer an effect. But if he reverses that, then it does have effect. Well, Your Honor, that is simply analyzing it from the standpoint of does the court retain jurisdiction in the event a superior court overturns it and remands it for additional action? In terms of what Judge Breyer actually did, he simply released that security. That was a solitary act. But it didn't end the security, though, because there's no deadline. There's no end clause to that security. Well, there is an end clause to the security in the sense that it's only valid until there is a non-appealable judgment. See, I don't see that in that language. Well, it's not. I mean, I'm talking about the LOU itself. Yeah, me too. The LOU refers to basically it's available until such time as there's no further appeals that are available. And in our view, the — I mean, is that in the language of the LOU? I don't see it. Your Honor, I'd have to take a look at it again. But my recollection is that it basically says that it stands for security until such time as the court has reached the finality in terms of a decision. In our case, we actually have finality. We have finality through the mandate that the Ninth Circuit issued on May 10th, 2024. It went up to the Supreme Court by virtue of a petition for writ of certiorari, which the Supreme Court did not grant. So effectively, that decision became final for all purposes. Well, and yet we're here, so maybe not so final. Well, Your Honor, we're here because of, in our view, a specious attempt at trying to collaterally attack the decision by Judge Breyer. But it's your view, it's specious, doesn't really change the fact that this court could decide that the Rule 60 motion should have been granted, in which case there'd still be a live proceeding. I don't disagree with that, Your Honor. You have that prerogative. So maybe not final, as you've just described it? Well, Your Honor, I would say that it is final. If you take a look at Rule 60c2, it provides that a motion does not affect the judgment's finality or suspend its operation. And so here we have the judgment was final in May of 2024 when the appellants filed their Rule 60b5 motion. They did not file any type of motion to stay the enforcement of that action. So we've had finality since May of 2024 about this case. And if that's the case, then we have no quasi-in rem jurisdiction. But I guess my problem is that the letter does not say, at the final non-appealable judgment, this letter, the security will end. It just says, in the event of a final judgment, all this happened. So if the Rule 60b motion was reversed, then this letter becomes operative again, correct? I would have to agree with that, Your Honor. But there's – So it would have prospective effect. That's where I disagree with Judge Breyer's opinion. Like, it could be applied prospectively. Well, Your Honor, you're – I think you are engaging in a semantics with respect to jurisdiction versus the vacatur order. The vacatur order was very distinct. It simply said this security is released. Yes. The court – there's no question that the court retains jurisdiction to do what it chooses to do. But Judge Breyer did not have any expectation that he would have to do anything unless the superior court overturned him. That does not create prospective application. There was nothing that Judge Breyer expected in terms of that judgment. Well, I'm just looking at 60b-5, and the question is whether or not it could be – the judgment could be applied prospectively. And the answer is, in this case, yes. But the district court said no. That's – don't you think that's wrong? No, I don't, Your Honor. I don't agree with your assessment, respectfully, because it did not require – if you look at the standards for Rule 60b-5, it didn't compel anybody to perform or restrain it from performing a future act, so it's not executory. And it didn't involve a court's supervision of changing conduct. Well, to me, it is – if you look at the letter, it's almost like an executory contract, right? If – if a future event happens, then it becomes operative again. And in this case, if the vet couture order gets reversed, then it becomes operative again. So it's almost like an executory contract. Well, Your Honor, but it's not the LOU that we're talking about in terms of whether or not the LOU remains operative in our view. It's whether or not the court's order has prospective application. Yes. And then if the order reverses the vet couture order, then it becomes – then the LOU becomes operative again. And so it does have prospective effect. Well – Do you disagree with that analysis? I do, Your Honor. How? Well, respectfully, if you take a look at the standard that Judge Breyer applied, if you look at – bear with me for a second. Well, I'm just looking at the text of 60b-5, and it just says if it could be – applying it prospectively is no longer inequitable. And if it has prospective effect, then it could either be equitable or not. But as a legal matter, it seems like it's still within the realm of Rule 60b-5. Well, again, Your Honor, I think you have to look at it in terms of whether or not the order issued by Judge Breyer was – had prospective application. It's not whether or not the LOU remains – has vitality of its own. It is whether or not that vet couture order has any – that vet couture order on its own does not mandate any action. It would require the act of a superior court to overturn what Judge Breyer did in order to change the outcome. And from my perspective, that does not create prospective application. And I think I'm just about out of time, Your Honor. Anything further from my colleagues? No. All right, thank you very much, counsel. Thank you, Your Honors. Very briefly, my two minutes. I understood my friend say to the court that the security was released by order of the district court. It was not. It was never released by order of the district court. It was not released by its own terms. There is nothing in the order of the court save for and after the fact dismissal of the case that was entered about 15 days after we filed our notice of appeal. And the district court had been divested of its ability to make orders. Is your point, then, that if the district court reversed the vacateur order, it would have prospective effect at least on the security? Please ask him again. Sure. If the district court, you know, granted the Rule 60b-5 motion and reversed the vacateur order, wouldn't it have prospective effect at least on the security? Yes. Yes. What we're asking for is to have trial on the merits of these issues. It's not very difficult because the district court decided here on a probable cause basis. The court in Norway determined the facts on a full hearing with live witnesses and everything else, with counsel on both sides. So that's why we contend it has some effect. And we cited the Supreme Court decision as to what happens in a case where there is a reversal of the district court on the law, but the facts on remand are found to be that the court accepts those of the district court if they were correctly done. And this is what we contend here. And the case is Ford Motor Company v. EOC. I have a cite for it. 458 U.S. 219, page 224, footnote 7. Thank you, counsel. Appreciate it. Thank you, Your Honor. I appreciate the briefing and argument in this case. This matter is submitted.
judges: CLIFTON, OWENS, BUMATAY